IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JARED CARTY | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| STEEM MONSTERS CORP. d/b/a | : | |
| SPLINTERLANDS, et al. | : | NO. 20-5585 |
| | : | |
| v. | : | |
| | : | |
| JARED CARTY AND PIMPORN CARTY | : | |

## MEMORANDUM AND ORDER

Plaintiff, Jared Carty ("Plaintiff"), brought this action against Defendant, Steem Monsters Corp. d/b/a Splinterlands ("Steem Monsters" or "Defendant"), its co-founders Blair Jesse Reich ("Mr. Reich") and Matthew J. Rosen ("Mr. Rosen"), and Steem Engine Corp., a third-party entity operated by one of the co-founders, alleging breach of contract, fraud, and related claims arising from the operation of the digital card game called Splinterlands.[1] Presently before the court is Plaintiff's "Motion for Adverse Inference Against Defendant Steem Monsters for Spoliation of Evidence" (Doc. 66), seeking sanctions for spoliation of evidence and an extension of the now-lapsed fact discovery

---

[1]Plaintiff and his wife, Pimporn Carty ("Mrs. Carty"), initiated this action while represented by counsel, see Doc. 1, but counsel sought and was granted permission to withdraw and the matter was placed in suspense to give Plaintiffs time to retain new counsel. Docs. 45 & 50. By Order dated July 20, 2022, I granted Plaintiffs' motion to dismiss Mrs. Carty as a Plaintiff, lifted the stay, indicated that Plaintiff will proceed pro se, and issued a partial schedule with a fact discovery deadline of August 31, 2022, expert report deadlines of September 23 and October 21, 2022, and a dispositive motion deadline of November 18, 2022. Doc. 60. Mrs. Carty remains in the case as a counterclaim Defendant only.

deadline to conduct discovery on the spoliation issue, and Defendant's response in opposition thereto (Doc. 69). For the following reasons, the motion will be granted in part and denied without prejudice in part.

I.     **BACKGROUND**

On September 23, 2020, in anticipation of this litigation, Plaintiff's former counsel served attorneys for Defendant with a "Notice to Preserve" letter. See letter dated 9/23/20, attached to response as Exh. A (Doc. 69-1 at 2-6) ("Notice").[2] The Notice advised Defendants to "[p]reserve all paper and electronic records that are in any way related to Steem Monsters . . . , Ste[e]m Engine Corp., and the involvement of [Mr.] Reich and [Mr.] Rosen in those entities." Id. at 2. The Notice identified electronic records to be preserved, including "all emails, text messages, [and] chat records." Id. The Notice also identified examples of electronically stored information ("ESI") to be preserved, including "information residing on servers, personal computers, laptop computers, tablets, cellphones, digital and optical storage media, and internet or cloud-based email and storage platforms." Id. at 3. Under the heading "Paper Preservation of ESI is Inadequate," the Notice directed that because "[p]aper documents do not preserve metadata, and thus do not provide a substitute for ESI[, i]f potentially discoverable information exists in both paper form and ESI, both forms should be preserved." Id. at 5. The Notice covered "ESI that reflects a date 'created' or a date 'last modified'

---

[2]All documents will be referred to by their ECF pagination.

(whichever is earlier) from January 1, 2018, through the date of this letter," that is, through September 23, 2020.  Id. at 3.

On November 9, 2020, Plaintiff and his wife commenced this action by filing a counseled Complaint, see Doc. 1, followed by a counseled Amended Complaint on February 16, 2021.  Doc. 15.  On February 26, 2021, Defendants filed an Answer asserting a counterclaim for defamation.  Doc. 16 ¶¶ 225-40.[3]  The parties then commenced discovery.

According to Defendants, on December 28, 2021, Plaintiff served Defendants with interrogatories asking them to describe with specificity the efforts they took to comply with the Notice, and Defendants responded that their efforts included

> preserving ESI in native format, and suspending automatic and manual deletion of ESI, including suspending routine destruction, such as: purging the contents of email repositories by age, capacity, or other criteria; running data-wiping, erasure, or encryption software, utilities, or devices; over-writing, erasing, destroying, or discarding back-up media; re-assigning, reimaging or disposing of hard drives, cellphones, devices, or storage media; running anticirus or other programs effecting wholesale metadata alterations, or running metadata stripping utilities; releasing or purging online email and ESI storage repositories; running drive or file defragmentation or compression programs; and deleting any contents of or disabling social media accounts.

---

[3]On April 16, 2021, the Honorable Joseph F. Leeson, Jr., to whom the case was originally assigned, referred the matter to Magistrate Judge Henry S. Perkin on consent of the parties, see Doc. 19, and the matter was reassigned to the undersigned upon Judge Perkin's retirement.  Doc. 25.

3

Doc. 69 at 3.[4]  Defendants also objected to Plaintiff's request for production of documents outside of the relevant time period, which Defendants defined as February 1, 2019 (the date Plaintiff alleged to have first learned of the Splinterlands game) through the date of the filing of the Complaint (November 9, 2020).  Id.  Plaintiff identifies "the Steem Monster official Discord server" as the repository of key evidence, Doc. 66 at 1, and Defendants represent to the court that they have "produced more than 17,000 pages of messages from its Discord servers."  See Doc. 69 at 5.

On August 19, 2022, Plaintiff[5] deposed Mr. Rosen.  See Rosen Deposition (partial), attached to response as Exh. B (Doc. 69-1 at 8-10) ("Rosen Dep.").[6]  In response to questions regarding Steem Monsters' compliance with the Notice, Mr. Rosen testified that Steem Monsters retained backups of data from Discord:

> Q:   Okay.  Can you please tell me what steps Steem Monster Corporation took to protect data that was protected under the protective order under the notice preserve order?
>
> A:   We maintain regular backups of all of our data, and it is our -- our general practice not to delete any data from our -- our systems --
>
> Q:   Okay

---

[4]Although Defendants do not attach the interrogatories or responses to their response to the present motion, Plaintiff has not contested Defendant's representations as to their content or to Defendants' assertion, see Doc. 69 at 3, that Plaintiff never objected to Defendants' responses.

[5]As noted, I granted counsel's motion to withdraw on April 1 of this year, and stayed the matter until July while Plaintiff unsuccessfully attempted to retain other counsel.  Docs. 50 & 60.  Thus, Plaintiff has been acting pro se since April 1, 2022.

[6]Mr. Rosen testified as a corporate representative for Steem Monsters.  Doc. 66 at 1; Doc. 69 at 3.

4

A: -- which always archive it so that we -- we have access to it.

Q: So you have an archive of all of your data?

A: That's -- as far as I'm aware, yes.

Q: Does that include social media sites?

A: Define social media sites.

Q: Well, posts that would be on Facebook or Discord.

A: Those are not data that we maintain in -- in any data -- data stores.

Q: Okay. So you have no -- you didn't take any steps to preserve data that was recorded on, for example, Facebook or Discord?

A: We -- we definitely -- I -- I'm not sure about Facebook, but we definitely took steps to record data from Discord.

Q: So how -- the data that you recorded or preserved from Discord, how did you do that?

A: We used the tool that allowed us to download to our local computers all of the, you know, relevant messages from the relevant channels in . . . Discord, to the extent that those messages were still available to us through the Discord platform.

Id. at 8-9. Plaintiff then questioned Mr. Rosen regarding Plaintiff's belief that all messages and data were removed from the Steem Monsters Discord channel around January 15, 2022:[7]

> Q: .... So if we were to go to the Discord -- your Discord server currently, we would be able to access all messages that were -- that have ever been posted other than the few that you deleted for, you know --
>
> A: I -- I can't guarantee that, right, as I said, the Discord manages that platform. They -- they met -- I -- I don't know -- you know, I know in some cases they archive old messages after a certain amount of time that -- then we were not able to access through the platform. So as I said, we can only access what Discord allows us to access through their platform
>
> Q: Are you aware of a situation that happened in January where all messages were deleted from your Splinterlands server?
>
> A: I -- I'm not aware of that, but I'm -- I'm also not the one -- I don't -- I don't manage our Splinterlands Discord.
>
> Q: Can you let me know who does that?
>
> A: Mr. Reich has done it in the past. I would have to find out who's -- who does that now, or -- or at the time that you're asking about.

Id. at 10.[8]

---

[7] As will discussed, Plaintiff's belief that messages were deleted is the main basis of the present motion for sanctions and/or adverse inference. See Doc. 66 at 1.

[8] These were the only portions of Mr. Reich's deposition that were attached to Defendants' response. Plaintiff did not provide the court with any portion of the deposition transcript.

Plaintiff did not notice the depositions of Mr. Reich, and it appears that he did not depose any other individuals or corporate defendants, nor did Plaintiff subpoena records from Discord. Additionally, neither party sought an extension of the deadlines set forth in my July 20, 2022 Order.

## II. LEGAL STANDARDS

Spoliation of evidence generally refers to "instances where evidence has been altered or destroyed," and can be addressed in the court's discretion by sanctions including an instruction to the jury that the evidence would have been harmful or dismissal of the claim at issue. Bull v. United Parcel Serv., Inc., 665 F.3d 68, 72-73 (3d Cir. 2012). This general rule is codified with respect to sanctions for spoliation of electronically stored information ("ESI") in Federal Rule of Civil Procedure 37(e):

> **(e) Failure to Preserve [ESI].** If [ESI] that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it,
>
> and it cannot be restored or replaced through additional discovery, the court:
>
> > **(1)** upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice; or
> >
> > **(2)** only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may:
> >
> > > **(A)** presume that the lost information was unfavorable to the party;
> > > **(B)** instruct the jury that it may or must presume the information was unfavorable to the party; or
> > > **(C)** dismiss the action or enter a default judgment.

Fed. R. Civ. P. 37(e).  Thus, a court must determine if spoliation of evidence occurred, and if so, determine the appropriate sanction.

The moving party has the burden to show that spoliation occurred and what sanctions are appropriate.  Goldrich v. City of Jersey City, 2018 WL 4492931, at *7 (D.N.J. Jul. 25, 2018), report and recommendation adopted as modified by, 2018 WL 4489674 (D.N.J. Sept. 19, 2018).[9]  To show that spoliation occurred, the moving party must show (1) that certain ESI should have been preserved in anticipation or conduct of litigation, (2) that evidence was lost, (3) that ESI was lost because the non-moving party failed to take reasonable steps to preserve it, and (4) that the lost material cannot be restored or replaced.  Id., 2018 WL 4492931, at *7.

To determine that sanctions should be imposed, the court must find either prejudice to the moving party or that the non-moving party acted with the intent to deprive the moving party of the ESI's use in the litigation.  Goldrich, 2018 WL 4492931, at *8.  When imposing spoliation sanctions, the court should consider "(1) the degree of fault of the party who altered or destroyed the evidence; (2) the degree of prejudice suffered by the opposing party; and (3) whether there is a lesser sanction that will avoid substantial unfairness to the opposing party and . . . deter such conduct by others in the future."  Id. (quoting Capogrosso v. 30 River Court E. Urban Renewal Co., 482 F. App'x 677, 682 (3d Cir. 2012) and Schmid v. Milwaukee Elec. Tool Corp., 13 F.3d 76, 79 (3d

---

[9]As in Goldrich, 2018 WL 4492931, at *7 n.8, the parties do not address whether the burden of proof is a preponderance of the evidence or clear and convincing evidence, and there is no clear answer.  However, for the reasons discussed more fully in the next section, I need not decide which standard of proof applies at this time.

Cir. 1994)); see also Accurso v. Infra-Red Serv., Inc., 169 F. Supp.3d 612, 618 (E.D. Pa. 2016) (Rule 37(e) "makes explicit that an adverse inference is appropriate *only* on a finding that the party responsible for the destruction of the lost information *acted with the intent* to deprive another party of access to the relevant information.") (emphasis in original) (citing Fed. R. Civ. P. 37(e)(2)(A)). Speculation or circumstantial evidence alone is an insufficient basis on which to find that the non-moving party acted with intent to spoliate relevant evidence. Goldrich, 2018 WL 4492931, at *11.

### III. DISCUSSION

Plaintiff's motion asks the court to sanction Defendants for spoliation of evidence and impose an adverse inference against Defendants, and extend the time in which to conduct additional discovery on the question of spoliation. Doc. 6 at 1-3. Defendants argue that Plaintiff's motion should be denied as to sanctions because the alleged spoliation is based purely on conjecture and is not supported by facts or law, and that Plaintiff's request for additional discovery should be denied for those reasons and because Plaintiff failed to depose three out of the four defendants prior to the fact discovery deadline and failed to timely respond to Defendants' discovery requests. Doc. 69 at 2.

Defendants are correct that Plaintiff's motion is based purely on conjecture. He states that "[i]t is my belief that key evidence . . . has been destroyed. . . . Key evidence was contained on the Steem Monsters official Discord server," "[a]round January 15th 2022 it is my belief that all messages and data was removed from the Steem Monsters Discord channel," and "[i]t is also my belief based on public statements that Steem

9

Monsters staff intentionally deleted some messages." Doc. 69 at 1. Plaintiff identifies Mr. Rosen's deposition and "public statements" as forming the basis of his belief regarding spoliation. However, Plaintiff fails to identify the source or content of the public statements, and he mischaracterizes Mr. Rosen's testimony in important ways. For example, Plaintiff asserts that Mr. Rosen testified that Steem Monsters "did not have digital backups of the data containing communications other than PDF page print outs," Doc. 66 at 1, whereas Mr. Rosen testified that Steem Monsters kept digital backups of data from Discord, but that Discord manages its own platform so Steem Monsters can only access what Discord allows. Rosen Dep., Doc. 69-1 at 8-10. Plaintiff also asserts that Mr. Rosen identified Mr. Reich as the person "in control of the Stem Monsters Discord channel at the time of the [alleged] data loss" in January 2022, Doc. 66 at 1, whereas Mr. Rosen testified that Mr. Reich had managed Splinterlands Discord in the past but that he (Mr. Rosen) did not know who did so in January 2022. Rosen Dep., Doc. 69-1 at 10. Additionally, Plaintiff does not identify the specific channel(s) of the Spinterlands Discord platform in which messages were allegedly deleted, the context of the deleted messages, or the relevance of the messages to Plaintiff's claims.

  In sum, Plaintiff's "belief" that spoliation occurred is not sufficient to satisfy any degree of burden of proof. Goldrich, 2018 WL 4492931, at *11. In the absence of evidence to conclude that spoliation has occurred -- let alone that any such spoliation was intentional or motivated by bad faith -- no sanction is appropriate at this time. See Fed. R. Civ. P. 37(e) (a court must determine if spoliation of evidence occurred, and if so, determine the appropriate sanction).

However, Mr. Rosen's deposition testimony leaves open the possibility that relevant ESI may have been deleted by Defendants in violation of the Notice. For example, Mr. Rosen first stated in his deposition that posts on Facebook or Discord "are not data that we maintain . . . in any data . . . stores," but that "we definitely took steps to record data from Discord." Rosen Dep., Doc. 69-1 at 9. Similarly, after reiterating that he could not guarantee access to all messages posted on the Splinterlands Discord server because "Discord manages that platform," he testified that he was not aware of messages deleted from that server in January 2022 because "I don't manage our Splinterlands Discord," and indicated that Mr. Reich "has done it in the past." Id. at 10. Based on this testimony, it is impossible to determine whether deletions occurred in January 2022 and if so, whether relevant documents were not preserved and were lost.

Defendants aver that "at no point were all of the messages deleted from the Spinterlands channels operated by Splinterlands," Doc. 69 at 4, and attach to their response a screenshot of the Splinterlands Discord channel from September 9, 2022, which on the right hand side shows a search for "before: 2020-11-01" yielding over 200,000 results, and showing posts from October 31, 2020. See Screenshot of Splinterlands Discord channel dated September 9, 2022, attached to response at Exh. C (Doc. 69-1 at 12). The screenshot is of limited value. For example, it is unclear whether Steem Monsters/Splinterlands or Discord maintains or has control over the data, whether the entire thread on the right side of the screen would be accessible, whether all such postings for the relevant period would remain on the Discord platform, or whether the deletion of a post made outside the relevant period would remove threads that fall within

the relevant period. Without such knowledge, it is impossible to know whether relevant ESI was deleted or destroyed.

As Defendant points out, Plaintiff failed to notice Mr. Reich's deposition or to subpoena records from Discord before the discovery deadline passed, and Defendant is concerned that Plaintiff's request to conduct additional discovery on the spoliation issue amounts to a request "to indulge his fishing expedition." Doc. 69 at 12. I am sympathetic to Defendant's concerns, but I conclude that further discovery of the spoliation issue is warranted, particularly given the importance of ESI in this matter, and given Defendant's defamation counterclaim against Mr. Carty and his wife, which is based entirely on social media and other postings made by Plaintiff. See Answer Exh. A, Doc. 16 at 33-37. Therefore, I will allow Plaintiff the opportunity to conduct further discovery, limited to one deposition of Mr. Reich not to exceed two hours and focused solely on alleged spoliation. No other additional discovery will be permitted. If the deposition reveals evidence of spoliation, Plaintiff may renew his motion.

### IV. CONCLUSION

Plaintiff's motion is insufficient to satisfy the requirements of Rule 37(e), and therefore neither sanctions nor an adverse inference are warranted at this time. However, although the discovery deadline has passed, Mr. Rosen's deposition testimony did not fully address whether relevant ESI may have been deleted by Defendant in violation of the Notice, and therefore Plaintiff ought to have the opportunity to explore the alleged spoliation by questioning Mr. Reich. Such questioning shall occur within fourteen days of the date of this Memorandum and Order, at a date and time mutually agreed to by the

parties, not to exceed two hours, and shall be limited to the sole issue of spoliation. The motion is denied in all other respects, but without prejudice to Plaintiff renewing his motion for sanctions and/or a negative inference if warranted following Mr. Reich's deposition.

 An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JARED CARTY | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| STEEM MONSTERS CORP. d/b/a SPLINTERLANDS, et al. | : | NO. 20-5585 |
| | : | |
| v. | : | |
| | : | |
| JARED CARTY AND PIMPORN CARTY | : | |

**<u>ORDER</u>**

AND NOW, this 7th day of October 2022, upon consideration of Plaintiff's Motion for Adverse Inference against Defendant Steem Monsters for Spoliation of Evidence (Doc. 66), and Defendants' response thereto (Doc. 69), IT IS HEREBY ORDERED that the motion is GRANTED IN PART AND DENIED IN PART. The motion is granted insofar as Plaintiff may depose Mr. Reich within fourteen days of the date of this Order, at a date and time mutually agreed to by the parties, limited to two hours and to the sole issue of the alleged spoliation of electronically stored information. The motion is denied without prejudice in all other respects.

BY THE COURT:

/s/ Elizabeth T. Hey

_____
ELIZABETH T. HEY, U.S.M.J.